# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# SHREVEPORT DIVISION

| | | |
|---|---|---|
| **ROBERT WARD WILLIAMS** | * | **CIVIL ACTION NO. 07-1345** |
| **VERSUS** | * | |
| **MICHAEL J. ASTRUE, COMMISSIONER, SOCIAL SECURITY ADMINISTRATION** | * | **MAGISTRATE JUDGE HAYES** |

## MEMORANDUM RULING

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits. Pursuant to 28 U.S.C. § 636(c)(1) and with the consent of all parties, the district court referred the above-captioned matter to the undersigned magistrate judge for the administration of proceedings and entry of judgment. For reasons assigned below, the decision of the Commissioner is **AFFIRMED**, and this matter **DISMISSED** with prejudice.

## Background & Procedural History

Robert Ward Williams protectively filed the instant application for Supplemental Security Income payments on September 30, 2005. (Tr. 33-45). He alleged disability since June 7, 2005, due to two heart attacks; heart failure; high blood pressure; asthma; back, leg, and ankle pain; poor eye sight; and bad kidneys. (Tr. 48-49). The claim was denied at the initial stage of the administrative process. (Tr. 24). Thereafter, Williams requested and received a July 13, 2006, hearing before an Administrative Law Judge ("ALJ"). (Tr. 159-172). However, in a February 21, 2007, written decision, the ALJ determined that Williams was not disabled under the Social Security Act, finding at Step Four of the sequential evaluation process that he was able to return to

past relevant work as a bus driver. (Tr. 10-19). Williams appealed the adverse decision to the Appeals Council. Nonetheless, on July 2, 2007, the Appeals Council denied Williams' request for review, thus the ALJ's decision became the final decision of the Commissioner. (Tr. 4-6).

On August 16, 2007, Williams sought review before this court. He alleges the following errors:

1)     the ALJ failed to provide any rationale for his Step Three determination;

2)     the ALJ failed to consider the effect of Williams' obesity; and

3)     the ALJ erred in disregarding Williams' testimony regarding a painful cramp; difficulty working in the heat; shortness of breath; and fatigue.

## **Standard of Review**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401. While substantial evidence lies somewhere between a scintilla and a preponderance, substantial evidence clearly requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). Conversely, a finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's

determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Secretary. *Greenspan v. Shalala*, 38 F.3d 232, (5th Cir. 1994).

### **Determination of Disability**

Pursuant to the Social Security Act (the "Act"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the Act utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the Act. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows,

(1) An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2) An individual who does not have a "severe impairment" of the requisite duration will not be found to be disabled.

(3)  An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

(4)  If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.

(5)  If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

*See, Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## Analysis

**a) Step Three**

The ALJ determined at Step Two of the sequential evaluation process that Williams suffers from severe impairments of coronary artery disease, hypertension, asthma, and chronic kidney disease. (Tr. 15). However, he found at Step Three that the impairments were not severe enough to meet or medically equal any of the impairments listed in the Category of Impairments in Appendix 1 to Subpart P, Social Security Regulations No. 4. *Id*.

The ALJ is required to discuss the evidence and explain the basis for his findings at each

unfavorable step of the sequential evaluation process. *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (citing 42 U.S.C. § 405(b)(1)). The instant ALJ's cursory findings at Step Three did not adequately explain the reasons for his determination. *Audler, supra*. Nonetheless, this omission does not require remand unless the claimant's "substantial rights" were affected. *Id*.[1] A claimant's substantial rights are affected at Step Three when he demonstrates that he meets, or at least appears to meet, the requirements for a Listing. *See, Audler, supra*.

Plaintiff contends that his impairment meets Listing 4.04B or C for ischemic heart disease. The relevant sections provide:

> 4.04 Ischemic heart disease, with symptoms due to myocardial ischemia, as described in 4.00E3-4.00E7, while on a regimen of prescribed treatment (see 4.00B3 if there is no regimen of prescribed treatment), with one of the following:
>
> \*     \*     \*
>
> B. Three separate ischemic episodes, each requiring revascularization or not amenable to revascularization (see 4.00E9f), within a consecutive 12-month period (see 4.00A3e).
>
> OR
>
> C. Coronary artery disease, demonstrated by angiography (obtained independent of Social Security disability evaluation) or other appropriate medically acceptable imaging, and in the absence of a timely exercise tolerance test or a timely normal drug-induced stress test, an MC, preferably one experienced in the care of patients with cardiovascular disease, has concluded that performance of exercise tolerance testing would present a significant risk to the individual, with both 1 and 2:
>
> 1. Angiographic evidence showing:
>
> a. 50 percent or more narrowing of a nonbypassed left main coronary artery; or

---

[1] In other words, the ALJ's error may be harmless. *Id*. (citing *Morris v. Bowen*, 864 F.2d 333, 334 (5th Cir. 2007)).

> b. 70 percent or more narrowing of another nonbypassed coronary artery; or
>
> c. 50 percent or more narrowing involving a long (greater than 1 cm) segment of a nonbypassed coronary artery; or
>
> d. 50 percent or more narrowing of at least two nonbypassed coronary arteries; or
>
> e. 70 percent or more narrowing of a bypass graft vessel; and
>
> 2. Resulting in very serious limitations in the ability to independently initiate, sustain, or complete activities of daily living.

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 4.04.

To establish that a claimant's injuries meet or medically equal a Listing, the claimant must provide medical findings that support all of the criteria for a listed impairment (or most similarly listed impairment). *See, Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990). An impairment that manifests only some of the requisite criteria, no matter how severely, does not qualify. *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S.Ct. 885, 891 (1990). If the plaintiff fails to demonstrate the specified medical criteria, the court will find that substantial evidence supports the ALJ's finding that Listings-level impairments are not present. *Selders*, 914 F.2d at 620. If a claimant does not exhibit all of the requisite findings of a listed impairment, medical equivalence may be established if the claimant has other findings related to the impairment that equal or exceed the required criteria for the listed impairment. 20 C.F.R. § 404.1526(b)(1). When determining whether an impairment medically equals a listing, the Commissioner considers all relevant evidence in the record. 20 C.F.R. §§ 404.1526(c), 416.926(c) (2006).[2]

---

[2] The regulations formerly provided that medical equivalence was determined from medical evidence only. 20 C.F.R. § 416.926(b) (2006). However, the Commissioner recently explained that despite the change in the regulation, they have always interpreted "medical evidence"to include not just findings from medical sources, but also other information, including

Plaintiff contends that he suffered three separate ischemic episodes requiring revascularization within a twelve month period. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 4.04B. However, plaintiff did not identify portions of the record to support his argument. At best, the undersigned could find only one recent episode of revascularization. (*See*, Tr. 139).[3] Plaintiff further contends that he meets Listing 4.04C. While there is evidence that he has 70 percent narrowing of a coronary artery,[4] the ALJ ultimately credited a consultative medical examiner's opinion that plaintiff retained the residual functional capacity for medium work. (Tr. 16-18, 152-158). Obviously if plaintiff can perform the exertional demands of medium work, he can perform activities of daily living (his allegations notwithstanding), and therefore does not meet Listing 4.04C.

Alternatively, plaintiff argues that his impairments medically equal a listed impairment. He observes that the record does not contain a "judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence . . ." as required by Social Security Ruling 96-6p. In response, the Commissioner emphasizes that the final decision regarding

---

the claimant's own testimony. 71 FR 10431 (3/1/2006).

[3] Revascularization means "angioplasty (with or without stent placement) or bypass surgery." Listing 4.00E(9)(f).
Although physicians contemplated angioplasty in August 2005, there is no indication that they actually performed the procedure. (Tr. 121-131). There is also no evidence that plaintiff underwent revascularization in connection with his May 30, 2006, hospitalization. (Tr. 141-143). It could be argued that plaintiff did not undergo the procedure because of his self-disclosed iodine allergy. *See*, Listing 4.00E(9)(f) (unamenable to treatment); Tr. 141, 145. However, plaintiff's admission history establishes that his chest pain was successfully treated with medication. (Tr. 145). Moreover, even if the May 30, 2006, hospitalization included revascularization, this would only establish two (of the requisite three) ischemic events within a twelve month period. *See*, Listing. 4.04B.

[4] (Tr. 124-125, 131).

medical equivalence is reserved to the ALJ. 20 C.F.R. § 416.927(e)(2). While correct, Social Security Ruling 96-6p unequivocally states that pursuant to longstanding policy, the judgment of a physician regarding medical equivalence must be received into the record as expert opinion evidence. SSR 96-6p.[5] The ruling further provides that the signature of a state agency medical or psychological consultant on Form SSA-831-U5 (Disability Determination and Transmittal Form) ensures that a physician has considered the issue of medical equivalence. *Id*. The Commissioner argues that the signature on the Disability Determination and Transmittal Form in this case establishes that a medical consultant rejected a finding of medical equivalence. (Tr. 24). Upon review of the form, however, it is readily apparent that a disability *examiner* completed the form, not a state agency medical consultant. (*See*, Tr. 24, lines 30, 32, 32A).[6] Moreover, although Disability Determination Services sent plaintiff to a consultative physical examination and obtained a physical residual functional capacity assessment, there is no indication that the consultative physician was a state agency physician trained and versed in the minutiae and peculiarities of the listings. Accordingly, the ALJ failed to comply with Social Security Ruling 96-6p.

Where the rights of individuals are affected, an agency must follow its own procedures, even where the procedures are more rigorous than otherwise would be required (*e.g.* by case law).

---

[5] Although Social Security Rulings are not binding on the federal courts, they are "binding on all components of the Social Security Administration." *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001); 20 C.F.R. § 402.35 (b)(1). The Fifth Circuit frequently relies upon the rulings in evaluating the Commissioner's decisions. *Myers, supra* (citations omitted).

[6] Of course, a disability examiner is not a medical doctor, and his opinion is not considered an acceptable medical source statement or afforded the same weight as an opinion by a medical or psychological consultant of the state agency. *See*, 20 C.F.R. 404.1527(f), 416.927(f); 404.1513(d)(3) and 416.912(d)(3).

*See, Hall v. Schweiker,* 660 F.2d 116, 119 (5th Cir. 1981)(citations omitted). If an agency violates its own rules, with resulting prejudice, then the underlying proceedings are tainted, and any resulting actions cannot stand. *Id*. Nonetheless, "[p]rocedural perfection in administrative proceedings is not required." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988). Procedural improprieties "constitute a basis for remand only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision." *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir.1988).

The instant record does not indicate a likelihood or even reasonable possibility that a medical consultant would have found medical equivalence based on the totality of plaintiff's impairments.[7] Although plaintiff suffers other severe impairments, including asthma and chronic kidney disease, there is substantial evidence that these impairments do not significantly limit his functional capacity. (*See e.g.*, Tr. 148, 153-154). Moreover, despite evidence documenting obesity,[8] plaintiff's treating physicians and the consultative physician did not see fit to reduce

---

[7] "To establish prejudice, a claimant must show that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996).

[8] Obesity can exacerbate the effects of cardiovascular impairments. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 4.00I(1). That section provides,
> [w]hat effect does obesity have on the cardiovascular system and how will we evaluate it? Obesity is a medically determinable impairment that is often associated with disorders of the cardiovascular system. Disturbance of this system can be a major cause of disability if you have obesity. Obesity may affect the cardiovascular system because of the increased workload the additional body mass places on the heart. Obesity may make it harder for the chest and lungs to expand. This can mean that the respiratory system must work harder to provide needed oxygen. This in turn would make the heart work harder to pump blood to carry oxygen to the body. Because the body would be working harder at rest, its ability to perform additional work would be less than would otherwise be expected. Thus, the combined effects of obesity with cardiovascular impairments can be greater than the effects of each of the impairments considered separately. We must

plaintiff's exertional capacity below the medium level. (Tr. 119, 142, 155-158).[9]

In sum, despite the ALJ's failure to discuss the rationale for his Step Three finding and his failure to obtain medical equivalence evaluation by a medical consultant, plaintiff has not demonstrated that his "substantial rights" were affected by the ALJ's omissions.[10] *Contrast, Audler, supra*.

b) <u>Residual Functional Capacity</u>

The ALJ determined that plaintiff retained the residual functional capacity to perform the full range of medium work. (Tr. 15).[11] The ALJ's assessment is substantially supported by the

---

> consider any additional and cumulative effects of obesity when we determine whether you have a severe cardiovascular impairment or a listing-level cardiovascular impairment (or a combination of impairments that medically equals the severity of a listed impairment), and when we assess your residual functional capacity.

*Id*.

[9] Plaintiff's treating physicians did not impose any specific limitations, and released him to activity as tolerated. Plaintiff also acknowledged that his physicians have not limited his activity. (Tr. 163).

[10] *I.e.*, that he appeared to meet or equal a Listing.

[11] Medium work is defined and explained by Social Security Ruling 83-10:
> [t]he regulations define medium work as lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds. As in light work, sitting may occur intermittently during the remaining time. Use of the arms and hands is necessary to grasp, hold, and turn objects, as opposed to the finer activities in much sedentary work, which require precision use of the fingers as well as use of the hands and arms.
>
> The considerable lifting required for the full range of

examination findings and opinion of a consultative physician, Tom Senff, M.D. (Tr. 152-158).
Plaintiff contends that the ALJ erred because he failed to address whether his obesity caused any limitations. Plaintiff relies on Social Security Ruling 02-1p which states that "[w]hen we identify obesity as a medically determinable impairment . . . we will consider any functional limitations resulting from the obesity in the RFC assessment, in addition to any limitations resulting from any other physical or mental impairments that we identify." SSR 02-1p. However, the consultative physician examined plaintiff on October 5, 2006, noted his weight and cardiovascular problems, yet opined that these impairments did not preclude the residual functional capacity to perform a full range of medium work. (Tr. 152-158).[12]

Plaintiff also argues that the ALJ failed to address his complaints of dyspnea, fatigue, and

---

> medium work usually requires frequent bending-stooping. (Stooping is a type of bending in which a person bends his or her body downward and forward by bending the spine at the waist). Flexibility of the knees as well as the torso is important for this activity. (Crouching is bending both the legs and spine in order to bend the body downward and forward). However, there are a relatively few occupations in the national economy which require exertion in terms of weights that must be lifted at times (or involve equivalent exertion in pushing or pulling), but are performed primarily in a sitting position, e.g., taxi driver, bus driver, and tank-truck driver (semi-skilled jobs). In most medium jobs, being on one's feet for most of the workday is critical. Being able to do frequent lifting or carrying of objects weighing up to 25 pounds is often more critical than being able to lift up to 50 pounds at a time.

Social Security Ruling 83-10.

[12] The ALJ's decision also included an approximation of the usual statement that "if a severe impairment exists, all medically determinable impairments must be considered in the remaining steps of the sequential analysis." (*See*, Tr. 14). The Fifth Circuit has held that the foregoing statement establishes that the ALJ considered the cumulative effect of plaintiff's obesity. *See, Thompson v. Astrue*, 232 Fed. Appx. 421, 2007 WL 1455854 (5th Cir. 5/18/2007) (unpubl.).

a painful cramp. However, as recently as June 13, 2006, plaintiff reported no shortness of breath. (Tr. 139). Moreover, despite experiencing flank pain in May 2006, plaintiff did not report the pain in subsequent examinations. (Tr. 148, 139, 152-158). The ALJ found that plaintiff's allegations were only partially credible. (Tr. 17). In so doing, he relied in no small part upon the recent consultative examination. *Id*. The ALJ's credibility discussion satisfies the requirements of 20 C.F.R. § 404.1529. *See, Undheim v. Barnhart*, 214 Fed. Appx. 448 (5th Cir. Jan. 19, 2007) (unpubl.) (opinion as a whole gave sufficient reasons and documentation for the ALJ's credibility determination); *Cornett v. Astrue*, 261 Fed. Appx. 644 (5th Cir. Jan. 3, 2008) (unpubl.) (ALJ gave some weight to claimant's complaints; thus claimant's arguments that his subjective complaints were not given enough weight is unavailing); *Hernandez v. Astrue*, 2008 WL 2037273 (5th Cir. May 13, 2008) (unpubl.) (despite claimant's subjective allegations of pain, the ALJ gave "greatest weight" to treating physician's opinion).[13]

Accordingly, the court finds that the ALJ's residual functional capacity assessment and the Commissioner's decision as a whole is supported by substantial evidence and is free of legal error. For the reasons assigned above,

The Commissioner's decision is **AFFIRMED**, and the matter **DISMISSED** with prejudice.

---

[13] Plaintiff insinuates that the ALJ's unsupported residual functional capacity assessment undermined the vocational expert's testimony in this matter. However, to the extent that the ALJ relied upon vocational expert testimony in his Step Four determination, the undersigned observes that the hypothetical need only only reasonably incorporate the disabilities and limitations recognized by the ALJ. *Bowling v. Shalala*, 36 F.3d 431 (5th Cir. 1994); *Weimer v. Astrue*, 2008 WL 2604995 (5th Cir. Jul. 1, 2008) (unpubl.). In this case, it did. *See* discussion, *supra*.
   Plaintiff does not otherwise allege any errors with the remaining steps of the sequential evaluation process.

THUS DONE AND SIGNED at Monroe, Louisiana, this 24th day of September, 2008.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE